T.C. Memo. 1998-277


UNITED STATES TAX COURT


JOHANNES M. SCHALEKAMP, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 17980-96.                    Filed July 29, 1998.


        P filed his 1989 Form 1040NR on May 29, 1990.
The notice of deficiency was issued on May 22, 1996.
<u>Held</u>:  the deficiencies determined are barred by the
expiration of the period of limitations.  Sec. 6501(a),
I.R.C.


<u>William M. Sharp, Sr.</u>, <u>William T. Harrison III</u>, and <u>Vernon</u>
<u>Jean Owens</u>, for petitioner.

<u>Howard P. Levine</u> for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION


HALPERN, <u>Judge</u>:  By notice of deficiency dated May 22, 1996,
respondent determined a $4,834,273 deficiency in petitioner's

1989 Federal income tax, a $178,587 accuracy-related penalty, and a $2,956,005 fraud penalty.

Respondent has conceded the fraud penalty. The issues remaining for decision are: (1) Whether the period of limitations on assessment and collection of petitioner's income tax liability for 1989 expired before respondent mailed the statutory notice of deficiency; (2) whether, under sections 871(b)(1) and 897(a), petitioner was required to report amounts received in 1989 from his disposition of installment notes that he received in 1987 and 1988, and if so, in what amount; (3) whether respondent's determination of a deficiency is in part arbitrary within the meaning of Helvering v. Taylor, 293 U.S. 507 (1935); and (4) whether petitioner is liable for a penalty under section 6662(a) on account of negligence or disregard of rules or regulations. Unless indicated otherwise, all section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Because we find for petitioner with respect to the period of limitations, petitioner has successfully established an affirmative defense to respondent's determinations of a deficiency and penalties, and we need not further address the adjustments giving rise to respondent's determination of a deficiency or the accuracy-related penalty.

FINDINGS OF FACT

Some facts have been stipulated and are so found.  The stipulation of facts and attached exhibits are incorporated herein by this reference.

Background

Petitioner resided in Belgium at the time the petition was filed.

Petitioner was born in The Netherlands in 1932.  He is not a U.S. citizen.  Petitioner came to the United States in 1987 and resided here during 1987 and 1988.  In 1989, petitioner did not reside in the United States.

Petitioner's Returns

For both 1987 and 1988, petitioner made returns of Federal income tax on Form 1040, "U.S. Individual Income Tax Return" (the 1987 and 1988 returns, respectively).  For 1989, petitioner made a return of Federal income tax on Form 1040NR, "U.S. Nonresident Alien Income Tax Return" (the 1989 return).  Petitioner filed the 1989 return on May 29, 1990.

Notice of Deficiency

Respondent's notice of deficiency (the notice) is dated May 22, 1996.

Ampel Notes; Floridama Note

Petitioner began investing in real property in the United States in 1968.  Between 1976 and 1984, he acquired at least

12 parcels of unimproved real property located in Hernando, Citrus, Volusia, and Marion Counties, Florida (the 12 parcels). Ampel Corporation, Ltd. (Ampel), is a British Virgin Islands corporation. In December 1987, Ampel purchased the 12 parcels from petitioner. Ampel agreed to pay a total of $21 million for the 12 parcels. Petitioner received no cash from Ampel at the time of sale, but he received 12 notes from Ampel, in various amounts, one for each property, evidencing Ampel's obligation to pay the $21 million purchase price in installments, with interest (the 1987 Ampel notes). The 1987 Ampel notes are similar (at least 11 are; one, inexplicably, is not in evidence), all calling for both interest and principal payments beginning in January 1989. A mortgage secures each note. Petitioner reported the sale of the 12 parcels on the 1987 return. He reported that sale under the installment method of accounting. He reported a selling price of $21 million, an adjusted basis of $6,751,500, commissions and other expenses of sale of $189,365, and no payment in 1987.

Ampel did not make the 1989 payments to petitioner called for in the 1987 Ampel notes.

Floridama Finance, Ltd. (Floridama), is a British Virgin Islands corporation formed on February 24, 1989. On March 2, 1989, Floridama purchased the 1987 Ampel notes from petitioner. Floridama agreed to pay a total of $19,501,158.56 for the 1987

Ampel notes, with $201,158.56 to be paid immediately, in cash, and the balance ($19.3 million) due on March 2, 1999. Floridama's obligation to pay $19.3 million on March 2, 1999, was evidenced by its interest-bearing note (the Floridama note). Interest was to be paid on the Floridama note at an annual rate of 10.88 percent. Pursuant to a stock pledge agreement, petitioner held Floridama stock as security for the Floridama note. On March 2, 1989, the accrued interest on the 1987 Ampel notes was $2,449,974. Petitioner's adjusted basis in the 1987 Ampel notes at their sale to Floridama was $6,940,865

Sometime in 1991, petitioner exchanged the Floridama note for two notes from Ampel in the total amount of $25.5 million (the 1991 Ampel notes). Petitioner exchanged the Floridama note for the 1991 Ampel notes in order to facilitate Ampel's redemption of the 1987 Ampel notes. He did so because Ampel had failed to pay interest to Floridama on the 1987 Ampel notes, and Floridama had threatened to foreclose on the related mortgages, which, petitioner believed, would have limited the amount that, eventually, he would have been able to obtain from Floridama with respect to the Floridama note. As of the time of trial, petitioner still held the 1991 Ampel notes, on which he had, as of then, received no payment.

Holland Spring Notes

Holland Spring, Inc. (Holland Spring) is a Florida corporation. In December 1987, Holland Spring purchased from

petitioner (1) 1,000 shares of stock in The Masa Land Corp. (Masa Land), a Florida corporation, and (2) a parcel of real property located in Collier County, Florida (the Marco Beach lot). Holland Spring agreed to pay a total of $4 million for the Masa Land shares, with $200,000 to be paid immediately, in cash, and the balance ($3.8 million) evidenced by a note and due in two annual installments, in December 1989 and 1990, respectively. Holland Spring agreed to pay $2,350,000 for the Marco Beach lot, that amount evidenced by a note due in June 1990. Petitioner reported both sales on the 1987 return using the installment method of accounting.

In 1988, Holland Spring purchased from petitioner (1) 100 shares of Samajo Investment Corp. (Samajo), a Florida corporation, (2) 1,000 shares of Daytonapa Corp. (Daytonapa), a Florida corporation, and (3) a parcel of real property located in Spring Hill, Florida (the Spring Hill lot). Holland Spring agreed to pay a total of $840,000 for the Samajo shares, with $84,000 evidenced by a note due in 90 days and the balance ($756,000) evidenced by a second note due in 18 months. Holland Spring agreed to pay a total of $1.7 million for the Daytonapa shares, with $170,000 to be paid immediately, in cash, and the balance ($1,530,000) evidenced by a note and due in 6 years. Holland Spring agreed to pay a total of $195,000 for the Spring Hill lot, with $50,000 to be paid immediately, in cash, and the balance ($145,000) evidenced by a note due in the future.

Petitioner reported all three sales on the 1988 return using the installment method of accounting.

In 1989, petitioner sold the notes referred to in the preceding two paragraphs (the Holland Spring notes) to Herland Finance, Ltd. (Herland), receiving "approximately" $2.5 million in cash. At the time of that sale, petitioner's total basis in the Holland Spring notes was $2,724,451.

OPINION

I. Introduction

Section 1 of the Code imposes an income tax on the income of every individual who is a citizen or resident of the United States and, to the extent provided in sections 871(b) or 877(b), on the income of a nonresident alien. In pertinent part, section 897(a) provides that gain or loss of a nonresident alien individual from the disposition of a U.S. real property interest shall be taken into account under section 871(b)(1). The parties agree that, for 1987 and 1988, petitioner was a resident of the United States and that, for 1989, he was a nonresident-alien individual. Respondent determined a deficiency in petitioner's 1989 Federal income tax on the basis that petitioner had failed to report total capital gain income of $17,248,184 arising from the disposition in 1989 of the 1987 Ampel notes to Floridama and Holland Spring notes to Herland. Respondent determined, at least with respect to the disposition of the 1987 Ampel notes, that petitioner's gain arose "from the sale of United States real

property". Petitioner assigned error to that determination and argues on brief that, for various reasons, it is incorrect. We need not address the questions raised by petitioner with respect to section 897, however, because we find that petitioner did not omit from gross income a sufficient amount to trigger the 6-year limitations period found in section 6501(e)(1).

## II. Limitations on Assessment and Collection

Section 6501(a) provides a general rule limiting to 3 years after a return is filed the time in which a tax may be assessed or a proceeding in court without assessment for collection begun. If a taxpayer omits from gross income an amount properly includable in gross income that is in excess of 25 percent of the amount of gross income stated in the return, the period for assessment or a proceeding in court without assessment for collection is extended to 6 years. Sec. 6501(e)(1).

A claim that the period for assessing the tax has expired is an affirmative defense, and the party raising it must plead it and carry the burden of proving its applicability. Rules 39, 142(a). Petitioner has satisfied the pleading requirement. Moreover, the parties have stipulated that the 1989 return was filed with respondent's Philadelphia Service Center on May 29, 1990, and that the notice of deficiency in this case is dated May 22, 1996. Petitioner has, thus, made a prima facie case that the 3-year period of section 6501(a) has expired, and the burden of going forward with the evidence to show some applicable

extension shifts to respondent.  See <u>Mecom v. Commissioner</u>, 101 T.C. 374, 382-383 (1993), affd. without published opinion, 40 F.3d 385 (5th Cir. 1994); <u>Amesbury Apartments, Ltd. v. Commissioner</u>, 95 T.C. 227, 240-241 (1990).  Respondent avers that petitioner omitted from gross income an amount properly includable therein in excess of 25 percent of the amount of gross income stated on the return and, thus, respondent relies on the provisions of section 6501(e)(1).  Because we find that petitioner omitted no gross income from the 1989 return, section 6501(e)(1) is of no avail to respondent.

III.  <u>Omission From Gross Income</u>

   A.  <u>Introduction</u>

   Petitioner reported gross income of $385,150 on the 1989 return.  Twenty-five percent of $385,150 equals $96,288.  Thus, respondent must show that petitioner omitted gross income in excess of $96,288.  Respondent claims that petitioner was required to report, but failed to report, two items of gross income, viz, petitioner's gains from the dispositions of (1) the 1987 Ampel notes and (2) the Holland Spring notes.  In the notice, respondent set forth adjustments increasing gross income by a total of $17,248,184 on account of those two claimed omissions, viz, $14,059,135 on account of the 1987 Ampel notes and $3,189,049 on account of the Holland Spring notes.  On brief, respondent lowers his claim of unreported gross income with respect to the 1987 Ampel notes to $10,522,422, for total

unreported gross income (we calculate) of $13,711,471. Petitioner acknowledges that he did not report gain from the disposition of either the 1987 Ampel notes or the Holland Spring notes on the 1989 return, but petitioner argues that, even if he were required to report those gains (which petitioner says he was not), the omitted gains do not exceed $96,288.

Section 61(a)(3) includes in gross income: "Gains derived from dealings in property". Section 1001(a) specifies that gain from the sale or other disposition of property is the excess of the amount realized therefrom over the taxpayer's adjusted basis in the property. Section 1001(b) provides, as a general rule, that the amount realized from the sale or other disposition of property is the sum of any money received plus the fair market value of the property (other than money) received. Section 1011 specifies the taxpayer's adjusted basis in property. Section 453B deals specifically with gain or loss on the sale or other disposition of an installment obligation. The parties are in agreement that petitioner's adjusted bases in the 1987 Ampel notes and the Holland Spring notes were $6,940,865 and $2,724,451, respectively. Their disagreement is with respect to the amount realized on each sale.

The parties are in further agreement that, in determining the amount realized on each sale, some portion of the consideration received by petitioner is allocable to accrued interest and is not part of the amount realized on each sale.

- 11 -

Respondent does not claim that any amounts allocable to accrued interest are items of omitted gross income.

B.  Amount Realized on Disposition of 1987 Ampel Notes

Respondent argues that petitioner received both cash and property on the disposition of the 1987 Ampel notes.  The parties agree that petitioner received cash of $201,158.86.  Respondent argues that the fair market value of the Floridama note on March 2, 1989, was not less than its face amount, viz, $19.3 million.  Petitioner argues that it was $7 million.  We find that the fair market value of the Floridama note on March 2, 1989, was $7 million.

Fair market value is "the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and both having reasonable knowledge of relevant facts."  Sec. 1.170A-1(c)(2), Income Tax Regs; see McShain v. Commissioner, 71 T.C. 998, 1004 (1979).  Determining the fair market value of a long-term installment obligation is a question of fact.  Riss v. Commissioner, 368 F.2d 965, 970-971 (10th Cir. 1966), affg. T.C. Memo. 1965-198.

Neither party offered expert testimony as to the value of the Floridama note.  Petitioner testified that the "cash value" of the Floridama note--the value a willing buyer would pay a willing seller--of the Floridama note was $7 million.  Petitioner was a credible witness, knowledgeable about real estate in

Florida. He testified that, if he could have sold the 12 parcels in 1987 for $10 million in cash, he would have done so. He testified that he viewed the $21 million, no downpayment price agreed to by Ampel as a "speculative price". On March 2, 1989, when petitioner sold the 1987 Ampel notes to Floridama, Ampel was in default on those notes. Adding the unpaid, accrued interest to the $21 million principal amount of the 1987 Ampel notes results in an unpaid, total obligation of almost $23.5 million. The Floridama note was in the principal amount of $19.3 million and Floridama paid petitioner cash of $201,159. We do not believe that the 1987 Ampel notes were worth their face amount, nor do we believe that the Floridama note was worth its face amount. The 1987 Ampel notes were eventually exchanged by Floridama to Ampel for the Floridama note (received by Ampel from petitioner), and petitioner ended up with the 1991 Ampel notes, which, as of 1997, had not been paid. Relying principally on petitioner's testimony, we find, as stated, that the fair market value of the Floridama note, as of March 2, 1989, was $7 million.

Making the necessary allocations to interest, petitioner calculates that the amount realized on disposition of the 1987 Ampel notes was $6,448,806, which, given petitioner's adjusted basis in those notes of $6,940,895, means that petitioner realized a loss of $492,089, on the disposition of the 1987 Ampel notes, and we so find.

C.  Disposition of the Holland Spring Notes

In 1989, petitioner sold the Holland Spring notes to Herland.  At the time of that sale, petitioner's adjusted basis in the notes was $2,724,451.  Petitioner's unreported installment gain on the notes was $3,189,049, which leads us to believe that, as of the time of sale, the total unpaid principal amount of the Holland Spring notes was $5,913,500.  Petitioner testified that he sold the Holland Spring notes to Herland for approximately $2.5 million.  He further testified that he did so because he had never been paid any of the interest or principal due on any of the Holland Spring notes and he needed cash.  Petitioner was credible, and respondent has introduced no evidence to impeach petitioner's testimony.  We find that petitioner received approximately $2.5 million on the sale of the Holland Spring notes to Herland.  Given petitioner's adjusted basis in the notes of $2,724,451, we find that petitioner did not realize a gain on the disposition of the Holland Spring notes.

D.  Conclusion

Petitioner realized no gain on the disposition of either the 1987 Ampel notes or the Holland Spring notes.  Accordingly, petitioner omitted no gross income from the 1989 return.

IV.  Conclusion

Petitioner has not omitted gross income in excess of 25 percent of the gross income stated on the 1989 return.

Therefore, assessment or collection of the tax here in issue is barred by the section 6501(a) limitation on assessment and collection.

<u>Decision will be entered</u>
<u>for petitioner</u>.